[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 23, 2005
THOMAS K. KAHN
CLERK

No. 03-16439

EPA Docket No. 2003WL21949763

LEGAL ENVIRONMENTAL ASSISTANCE FOUNDATION, INC.,

Petitioner-Appellant,

versus

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent-Appellee,

STATE OF ALABAMA ex rel.
Troy King, Attorney General of the
State of Alabama; and Alabama Department
of Environmental Management,

Intervenors.

_____

No. 03-16440

_____

EPA Docket No. 2003WL21949763

LEGAL ENVIRONMENTAL ASSISTANCE FOUNDATION, INC.

Petitioner-Appellant,

versus

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent-Appellee.

_____

Petitions for Review of Decisions of the
Environmental Protection Agency
_____

**(February 23, 2005)**

Before ANDERSON, DUBINA and BLACK, Circuit Judges.

DUBINA, Circuit Judge:

The Legal Environmental Assistance Foundation, Inc. ("LEAF"), petitions the court to review the United States Environmental Protection Agency's ("EPA") decisions not to take any enforcement action against Florida's Title V Clean Air Act program and Alabama's Title V Clean Air Act program.[1]  These two cases are factually similar and procedurally identical.  Thus, we *sua sponte* consolidate the appeals.  Fed. R. App. P. 3(b)(2).

## I. BACKGROUND

---

[1] The State of Alabama intervened and agrees with the EPA's positions.

In 1990, Congress enacted Title V of the Clean Air Act (CAA), 42 U.S.C. § 7661-7661f. Title V authorizes state-run permit programs, subject to the approval of the EPA, for major stationary sources of air pollution. 42 U.S.C. § 7661a. Under Title V, major stationary sources of air pollution are required to obtain an operating permit, which establishes the CAA requirements for, among other things, emission limitations relevant to the particular polluting source.

Congress directed the EPA to promulgate the minimum requirements for a state-run Title V program, and also established the minimum elements that such a program must satisfy. 42 U.S.C. § 7661a(b). In particular, a Title V program is required to have:

> Adequate, streamlined, and reasonable procedures for expeditiously determining when [permit] applications are complete, for processing such applications, for public notice, including offering an opportunity for public comment and a hearing, and for expeditious review of permit actions, including applications, renewals, or revisions, and including an opportunity for judicial review in State court of the final permit action by the applicant, any person who participated in the public comment process, and any other person who could obtain judicial review of that action under applicable law.

42 U.S.C. § 7661a(b)(6). As directed, the EPA promulgated 40 C.F.R. Part 70 ("Part 70"), which incorporates the state judicial review requirement at 40 C.F.R. § 70.4(b)(3)(x).

3

Congress established a statutory schedule for a state's submission of its program to the EPA, and deadlines for the EPA to either approve or disapprove such program, in whole or in part. 42 U.S.C. § 7661a(d). Further, under 42 U.S.C. § 7661a(d), if a state fails to submit a program, or if the program submitted is not approved, then the EPA has an 18- month window where it may impose sanctions, after which it must impose sanctions, and after a 2 year window closes, the EPA is required to "promulgate, administer, and enforce a program . . . for that State." The available sanctions include the partial loss of federal highway funds and the application of strict emissions offset requirements for new sources of air pollution in certain areas. 42 U.S.C. § 7509(b).

The EPA is vested with the authority to enforce the statutory and regulatory requirements of an approved state Title V program. 42 U.S.C. § 7661a(i). The first step in the enforcement process is the issuance of a notice of deficiency ("NOD") to a state. 42 U.S.C. § 7661a(i)(1). Specifically, section 7661a(i)(1), provides that:

> Whenever the Administrator makes a determination that a permitting authority is not adequately administering and enforcing a program, or portion thereof, in accordance with the requirements of this subchapter, the Administrator shall provide notice to the State and may, prior to the expiration of the 18-month period referred to in paragraph (2), in the Administrator's discretion, apply any of the sanctions specified in section 7509(b) of this title.

4

If the deficiency is not corrected within 18 months from the issuance of the NOD, then the EPA shall impose sanctions, 42 U.S.C. § 7661a(i)(2), and "unless the State has corrected such deficiency within 18 months after the date of such finding, the Administrator shall, 2 years after the date of such finding, promulgate, administer, and enforce a program under this subchapter for that State." 42 U.S.C. § 7661a(i)(4).

Florida submitted a Title V program for EPA approval, and the EPA fully approved its program in 2001. 66 Fed. Reg. 49,837 (Oct. 1, 2001). Alabama also submitted a Title V program for EPA approval, and the EPA fully approved the program in 2001. 66 Fed. Reg. 54,444 (Oct. 29, 2001).

In October 2002, LEAF petitioned the EPA for a determination of deficiency as to Florida's Title V program. LEAF contended that Florida's standing requirement, which restricts judicial review of a Title V permit to those persons "adversely affected" by an administrative action, is too stringent. Specifically, LEAF argued that the plain language of 42 U.S.C. § 7661a(b)(6), merely requires that a person participate in the public comment process, and does not require a person to have suffered a threatened or actual injury. The EPA disagreed with LEAF's interpretation of 42 U.S.C. § 7661a(b)(6), and declined to

5

issue a NOD. The EPA responded, in a letter to LEAF, that Florida's judicial review requirement satisfies Title V because it is "consistent with Article III of the U.S. Constitution, Section 502(b) of the Clean Air Act, 42 U.S.C. § 7661a(b), and 40 C.F.R. § 70.4(b)(3)(x)." (R. at Vol. 1, Tab 19).

In February 2003, LEAF petitioned the EPA for a determination of deficiency as to Alabama's Title V program. LEAF contended that Alabama's standing requirement, which restricts judicial review of a Title V permit to those persons "aggrieved" by an administrative action, is too stringent pursuant to the plain language of 42 U.S.C. § 7661a(b)(6). The EPA disagreed, and declined to issue a NOD. The EPA responded, in a letter to LEAF, that Alabama's requirement for judicial review satisfies Title V because it too is "consistent with Article III of the U.S. Constitution, Section 502(b) of the Clean Air Act, 42 U.S.C. § 7661a(b), and 40 C.F.R. § 70.4(b)(3)(x)." (R. at Vol. 1, Tab 17).

LEAF now petitions this court for a review of these determinations.

## II. DISCUSSION

A threshold issue in this case is whether LEAF can satisfy Article III standing. *See Florida Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999) (stating that "every court has an independent duty to review

6

standing as a basis for jurisdiction at any time, for every case it adjudicates."). For the reasons that follow, we conclude that it cannot.

An association, such as LEAF, has standing to bring suit on behalf of its members when, among other things, "its members would otherwise have standing to sue in their own right." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (1977). The first element of the three elements that comprise the "irreducible constitutional minimum of standing" provides that "the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (quotations and citations omitted). LEAF, as the party invoking federal jurisdiction, bears the burden to establish this element. *See Lujan*, 504 U.S. at 561, 112 S. Ct. at 2136.

LEAF alleges that the EPA's action has denied it a determination that Florida and Alabama have failed to administer or enforce their Title V programs in accordance with the CAA, and, therefore, denied it and its members their asserted right to a state program that ensures that judicial review of Title V permit action is available to any person who participated in the public comment process. Further, LEAF argues that its inability to obtain judicial review of Title V permit action

*may* impair its ability to protect and enhance the air where LEAF members reside, work, travel, and recreate. These contentions, however, are insufficient to establish that LEAF or its members have suffered an injury in fact as a result of the EPA's refusals to issue a NOD for either state program.

If LEAF is aggrieved by a Title V permit action that is taken by Florida or Alabama, it is entitled to judicial review in the appropriate state court, in accordance with that state's laws. However, if LEAF is not harmed in any way by a particular state Title V permit action, then it has suffered no injury from its inability to obtain judicial review of that action. *See Lujan*, 504 U.S. at 573-74, 112 S. Ct. at 2143 ("We have consistently held that a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy."). Thus, LEAF cannot show an injury in fact here, and, therefore, it cannot satisfy Article III standing in either of these actions.[2]

---

[2] Because LEAF cannot show an injury in fact, we need not address the remaining two elements of standing: causation and redressability.

## III. CONCLUSION

Because LEAF has not suffered an injury in fact, it lacks Article III standing to challenge the EPA's determinations. Accordingly, we deny LEAF's petitions for review.[3]

**PETITIONS FOR REVIEW DENIED**.

---

[3] The EPA's motions to dismiss for lack of jurisdiction on a separate ground are denied as moot.